658 N.W.2d 124 (2003)
In re REQUEST FOR ADVISORY OPINION Regarding Constitutionality of 2002 PA 678.
Docket No. 123244.
Supreme Court of Michigan.
March 25, 2003.
On order of the Court, the request by the House of Representatives for an advisory opinion on the constitutionality of 2002 PA 678 is considered and, with all due respect to the House of Representatives, is DENIED, because the Court concludes that under the circumstances it would be an inappropriate exercise of its discretion to grant the request.
CORRIGAN, C.J., concurs and states as follows:
I join the Court's order because I have concerns regarding the adequacy of argument in the absence of an actual case or controversy. I agree that this legislation regarding court reorganization presents issues of great importance to the state; however, I question the wisdom of proceeding in a vacuum and risking that those issues are not sufficiently developed and evaluated.
Nonetheless, I offer this response to the questions raised in the dissenting statement to share my views regarding this Court's proper role in effecting legislative change. As noted in Canon 4 of the Code of Judicial Conduct, judges are in "unique position[s] to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice." The canon encourages judges, when possible, to participate in improving the law, the legal system, and the administration of justice. At the same time, judges should be careful to abstain from public comment regarding issues that could come before the court.
Because of its unique position, the Court is able to both advise the other branches of government regarding problems facing the judiciary and to investigate and offer possible solutions to those problems. This is a duty not borne lightly. This Court works strenuously to address problems regarding the law, the legal system, and the administration of justice, while at the same *125 time avoiding lobbying legislators on specific legislative proposals. Pinpointing problems and offering solutions are proper functions of the Court; evaluating the options and choosing the specific solutions are functions of the Legislature. The Court studied the issue of court reform for several years and made its best recommendation to the other branches. Determining the best way to accomplish the goal in actual legislation is a legislative function.
In sum, this Court takes very seriously its duty to work for the improvement of the administration of justice. To fulfill this duty, this Court must advise the other branches of government regarding the Court's unique experience with successes, problems, and possible solutions. Further than this the Court cannot, and does not, go. Although it is this Court's responsibility to actively work toward the improvement of our legal system, it is ultimately the Legislature's responsibility to enact solutions.
MARKMAN, J., dissents and states as follows:
For the reasons set forth in In Re 2002 PA 48, 467 Mich. 1203, 652 N.W.2d 667 (2002), and In Re Executive Message, 467 Mich. 1209, 651 N.W.2d 747 (2002), I would grant this request by the House of Representatives for an advisory opinion regarding the constitutionality of 2002 PA 678 on court reorganization. Our constitution's system of separated powers not only requires each branch of government, in its relationships with the others, to assert and defend its prerogatives, but also to demonstrate comity with the others. In this decision, as well as the two cited above, this Court, in my judgment, has failed to live up to this obligation by denying extremely rare requests for advisory opinions by coordinate branches of government.
What makes our denial of this advisory request especially troubling is that this Court has availed itself of the comity of the very same body, with regard to the very same legislation, that it now refuses to reciprocate. On March 7, 2002, this Court wrote to Speaker of the House Rick Johnson, as well as Governor John Engler and Senate Majority Leader Dan DeGrow, specifically setting forth principles for court reorganization legislation that would permit "concurrent jurisdiction among the trial courts on a local option basis," and that would be "consistent with the constitution...." Following this correspondence, a representative of this Court testified before the House of Representatives and the Senate in support of these principles, and enactment of the present law followed. While meeting the substantive standards that had been set forth by this Court, a question remained whether the legislation met the constitutional standards as well. Understandably, in light of this constitutional uncertainty, the chairman of the House Judiciary Committee, and the principal sponsor of court reorganization, indicated during committee proceedings and floor debate that he would later seek an advisory opinion from this Court. It is impossible, of course, to know whether, and how many, members of the Legislature may have been influenced to vote for court reorganization on the basis of the chairman's commitment.
In support of its request for an advisory opinion, the House of Representatives now asserts: (a) "that it is essential to judges, court personnel, funding authorities, and the public at-large that efforts to adopt a plan of concurrent jurisdiction in counties and judicial circuits across the state not be encumbered by doubts as to the constitutionality of 2002 PA 678" and (b) "that it *126 would facilitate the development of local plans of concurrent jurisdiction and protect against the use and loss of valuable resources, time, and money if issues of constitutionality were to be resolved by an advisory opinion of the Michigan Supreme Court...."
In response to the House of Representatives, this Court chooses summarily to deny the request for an advisory opinion, leaving critical constitutional questions in limbo, and potentially undermining the integrity of judicial decision-making in courts throughout Michigan. Comity, in my judgment, must extend in both directions.
It can hardly be said that the Legislature has abused the advisory opinion procedure, set forth in Const 1963, art 3, § 8, by presenting to this Court only its fourth request for such an opinion in more than thirteen years. Nor can it be said that the judgment of the House of Representatives here is unsound in assessing both the importance of the instant legislation and the importance of the constitutional issues that are implicated by court reorganization. The instant legislation would substantially revamp the structure of one of the three branches of Michigan government, essentially redefining the jurisdiction and the relationships of Michigan district, circuit, and probate courts. Whatever the practical merits of the reforms enacted in 2002 PA 678, and I believe that these may well be substantial, the House has acted wisely in recognizing that there are serious unresolved constitutional questions pertaining to these reforms. In this regard, the Legislature has directed the following "important questions of law" to the attention of this Court:
"Does 2002 PA 678 violate the provisions of Article VI, Section 1 of the Michigan Constitution of 1963?"

"Does 2002 PA 678 violate the provisions of Article VI, Section 13 of the Michigan Constitution of 1963?"

"Does 2002 PA 678 violate the provisions of Article VI, Section 15 of the Michigan Constitution of 1963?"

"Does the grant of concurrent jurisdiction to the probate, circuit, and district courts as set forth in 2002 PA 678 violate any of the provisions of Article VI, Sections 1, 13, or 15 of the Michigan Constitution of 1963 as cited above?"
If any of these questions is answered in the affirmative (and apparently they will not be answered at all at this juncture), the propriety of countless judicial decisions throughout Michigan may be called into question. At the least, countless motions and appeals will be filed and immeasurable litigative energy will be exercised in discovering piecemeal answers to the constitutional inquiries set forth by the House of Representatives.
Finally, it must be observed that 2002 PA 48, 467 Mich. 1203, 652 N.W.2d 667 authorizes this Court, the Michigan Supreme Court, to review and to approve court reorganization plans of the eighty-three counties of our state. Before the highest court of this state exercises this newly authorized power, it would be especially prudent for it first to evaluate whether it is exercising a power that is compatible with the constitution under which the Court itself has been established.
It is truly hard to comprehend what tasks, what decisions of this Court, could be of more long-term importance to the people of the state of Michigan than the resolution of constitutional questions concerning the structure of their court system. The resolution of these questions should be of the highest priority to this Court, just as demonstrating comity with the people's representatives in the Legislature, *127 should be of the highest priority to this Court.
I strongly dissent. This Court's summary denial of the Legislature's altogether reasonable request for an advisory opinion on court reorganization manifests a sense of misplaced judicial priority. I would grant the request of the House of Representatives.